**PLYMOUTH MUSIC CO. and Roncom Music Co., Plaintiffs,**

v.

**MAGNUS ORGAN CORP., Magnus Music Corp., and Charles Hansen Music & Books, Inc., Defendants.**

No. 75 Civ. 2670.

United States District Court, S. D. New York.

July 11, 1978.

Milton M. Rosenbloom, O'Brien, Raftery, Rosenbloom & Grainger, New York City, for plaintiffs.

Martin A. Rothenberg, Tashof, Sobler & Rothenberg, New York City, for defendant Magnus Music Corp.

A. Walter Socolow, Netter, Dowd & Alfieri, New York City, for defendant Charles Hansen Music & Books, Inc.

PIERCE, District Judge.

## OPINION AND ORDER

Plaintiffs Plymouth Music Co. and Roncom Music Co. bring this suit for an injunction against and to recover damages for alleged copyright infringement by defendants Magnus Organ Corp., Magnus Music Corp. and Charles Hansen Music and Books, Inc. The works claimed to be infringed are twelve compositions contained in a chord organ book known as "Magnus Organ Book No. 703", entitled "Popular Christmas Favorites for the Magnus Chord Organ." (hereinafter referred to as Songbook 703) (PX–31).

Jurisdiction of this Court is predicated on 17 U.S.C. § 101 (1976) (amended 1978).[1]

---

1. The Copyright Act was revised in its entirety by Pub.L. 94–553, Oct. 19, 1976, 90 Stat. 2541 which provided: "This Act . . . becomes effective on January 1, 1978, except as other-

The non-jury trial in this action began on October 12, 1977, was adjourned during the Christmas season, and continued during a snow blizzard on February 6 and 7, 1978. At the conclusion of trial, the Court reserved decision. The following shall constitute the Court's findings of fact and conclusions of law.

## FACTS

Plaintiffs and defendant Hansen are New York corporations engaged in the music publishing business. Plaintiff Plymouth handles distribution for plaintiff Roncom. By letter dated November 27, 1967 (PX–29) plaintiff Plymouth entered into a license agreement with defendant Magnus Publications, Inc., a subsidiary of Magnus Organ Corp. which manufactures chord organs. The agreement authorized Magnus Publications to publish, print, distribute and sell Songbook 703 in the United States and Canada. This license agreement was for a term of five years and provided that "(u)pon termination of this agreement all rights granted in this agreement shall terminate, except that (Magnus Publication) may sell any copies of the Songbook 703 on hand at the time of such termination." (¶ 8 of PX–29). Further, "the license herein granted (was) personal to (Magnus Publications) and non-assignable directly or by operation of law." (¶ 9 of PX–29).

Songbook 703 consisted of 15 songs which had been specially arranged by plaintiffs to be suitable for playing on Magnus chord organs. The 12 songs in dispute in this action and their respective copyright registration numbers are:

| | |
|---|---|
| It's Beginning to Look Like Christmas | Eu 236708 |
| Holiday Polka | Ep 100985 |
| Christmas Polka | Ep 208091 |
| Sweeter the Bells Never Ring | Ep 210221 |
| We Wish You a Merry Christmas | Ep 334793 |
| Come to the Stable | Ep 334790 |
| Christmas Fanfare | Ep 334791 |
| Gentle Jesus, Meek and Mild | Ep 334789 |
| Bells of Christmas | Ep 334792 |
| Christmas Party | Ep 209379 |
| He Came So Still | Ep 334794 |
| (There's No Place Like) Home for the Holidays | Ep 85262 |

The arrangements contained in the copyright registration certificates were choral or piano-vocal arrangements. Plaintiff Roncom owns the copyright to "Home for the Holidays." (PX–27). Plaintiff Plymouth owns the copyright to the remaining 11 songs. (PX–3, 5, 7, 9, 11, 14, 16, 18, 20, 22 & 24). All the right, title and interest in the separate compositions and the right to secure their copyrights were assigned to the respective plaintiffs. (PX–4, 6, 8, 10, 12, 13, 15, 17, 19, 21, 23, 25, 26, 27 & 28).

On or about June 4, 1971, Magnus Organ ceased doing business with Plymouth and commenced doing business with Hansen. It is undisputed that Hansen reprinted 4,550 copies of Songbook 703 between April 15, 1974 and July 25, 1974. (See Hansen trial memo. p. 4; PX–37). By invoices dated July 5, 1974, Hansen shipped 3,000 copies to Magnus Organ and 1,550 copies to Magnus Organ's distributor, Walter Kane & Sons, Inc. All copies of Songbook 703 presented in evidence, including those alleged to have been printed by Hansen, contain plaintiffs' copyright notices on the individual compositions. (See PX–30, 31, 31A, 32A, 33, 34, 35A).

On or about February 6, 1975, the Minetrans Corp. purchased from First Pennsylvania Bank, N. A., at a private foreclosure sale conducted by the bank, as a secured creditor of Magnus Organ, all of the bank's interest in tangibles and intangibles owned by Mangus Organ, including the name Magnus. (Pretrial Order ¶ 3(vi)). As a result Minetrans Corp. received 870 copies of Songbook 703 then remaining in the inventory of Magnus Organ. On or about March 6, 1975, Minetrans Corp. changed its name

wise expressly provided by this Act . . . .." Section 112 of Pub.L. 94–553 provided: "All causes of action that arose under Title 17 before January 1, 1978, shall be governed by Title 17 as it existed when the cause of action arose." Accordingly, the prior law governs this action.

to Magnus Music Corp. Of its inventory of 870 copies, Magnus Music Corp. sold 396 copies of Songbook 703.

## DISCUSSION OF LIABILITY

"Plaintiff's proof, reduced to its most fundamental terms, may be said to consist of two elements: ownership of the copyright by the plaintiff, and copying by the defendant." 2 *Nimmer on Copyright* § 141 (1976). In the present action, defendants have more or less conceded copying. In fact, the Court finds that the exact identity of the compositions in the books printed by Plymouth with those printed by Hansen establishes copying by the defendants.

■ As to the first element, the copyright registration certificate constitutes prima facie evidence in favor of plaintiffs' ownership. Section 209 of the Copyright Act provides that the registration certificate issued by the Copyright Office "shall be admitted in any court as prima facie evidence of the facts stated therein." 17 U.S.C. § 209 (1976) (amended 1978).

Defendants, however, claim that plaintiffs do not hold valid copyrights to the 12 works in question because the compositions copyrighted are either choral arrangements or piano-vocal arrangements of songs and tunes that are in the public domain and are therefore not copyrightable.

■ The burden of proof is on the defendants to overcome the prima facie presumption of validity of plaintiffs' copyright registrations. See *Wihtol v. Wells*, 231 F.2d 550, 553 (7th Cir. 1956). In this regard, defendants presented an expert witness whom the Court found to be so opinionated, biased and narrow-minded that his testimony was highly suspect.

"One requisite to copyrightability is that the work be original in the sense of being the creative product of the author's own effort. There is no requirement that it be original in the sense of being novel, that is,

the first of its kind in existence." *Northern Music Corp. v. King Record Dist. Co.*, 105 F.Supp. 393, 399 (S.D.N.Y.1952). The Court also notes that " '[o]riginal' in reference to a copyrighted work means that the particular work 'owes its origin' to the 'author.' No large measure of novelty is necessary. . . . A 'copy of something in the public domain' will support a copyright if it is a 'distinguishable variation'; . . . Originality in this context 'means little more than a prohibition of actual copying.' " *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 102–03 (2d Cir. 1951).

■ Even defendants' expert witness conceded that there was some originality or variation from the traditional public domain works in the songs "Christmas Polka" and "Come to the Stable." As to "Holiday Polka," defendants claim that the words are merely a translation and that the song is a combination of two public domain works— "Little Brown Jug" and a German drinking song. It is well settled that a translation of the words of a public domain song is copyrightable. See *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 104 (2d Cir. 1951); *Toksvig v. Bruce Publishing Co.*, 181 F.2d 664, 666 (7th Cir. 1950); 17 U.S.C. § 7 (1976) (amended 1978). Further, the Court credits the testimony of plaintiffs' expert witness Professor Rudolf Schramm and his rendition of the works as indicating that there is some originality in "Holiday Polka." Cf. *Hirsch v. Paramount Pictures, Inc.*, 17 F.Supp. 816 (S.D.Cal.1937) ("[T]he only other test available to a judge who is a musical layman [is] whether there is a resemblance noticeable to the average hearer.").

As to the songs "It's Beginning to Look Like Christmas," "Sweeter the Bells Never Ring," "Gentle Jesus, Meek and Mild," "Bells of Christmas," "Christmas Party," and "Home for the Holidays," the Court rejects the testimony of defendants' expert witness and finds more credible that of Professor Schramm who considered the lyrics to be original. In addition, the Court

further notes that it finds the music in "It's Beginning to Look Like Christmas" and "Home for the Holidays" to also contain enough originality to validate the copyrights.

As to the work "We Wish You a Merry Christmas," Professor Schramm, testified that the composition was the same as an Elizabethan tune but minus the embellishments. The Court notes, however, that Plymouth's copyright makes no claim to the words nor music of this song and, accordingly, the Court does not find that plaintiff Plymouth is entitled to relief for infringement of this copyright. Similarly, Plymouth's copyright registration certificate makes no claim to the authorship of the lyrics of "He Came So Still," but the lyrics were the only items considered original by Professor Schramm. Finally, the Court finds that Professor Schramm also conceded the lack of originality in the text and music of "Christmas Fanfare."

In sum, the Court concludes that nine of the twelve songs contained "at least a modicum of creative work" sufficient to uphold plaintiffs' copyrights.[2] See *Consolidated Music Publishers, Inc. v. Ashley Publications, Inc.*, 197 F.Supp. 17, 18 (S.D.N.Y. 1961).

■ Defendants also contend that they did not violate plaintiffs' copyrights because the choral and piano-vocal arrangements copyrighted were not the same as the chord arrangements used in Songbook 703. However, defendants' own expert witness conceded that most of the copyrighted compositions were similar or in some cases exactly the same as the ones printed in Songbook 703. Furthermore, no rearrangements were necessary to include the copyrighted lyrics in Songbook 703. Finally, the Court finds more credible the testimony of plaintiffs' witness Bernard Fisher, who has been in the music business since 1948, to the effect that the melodies are the same and

that they sound alike. Accordingly, the Court finds that plaintiffs' copyrights also protected the versions printed in Songbook 703.

■ Thirdly, defendant Hansen contends that it is not liable for copyright infringement since it is an innocent infringer. It is well settled that "[i]ntention to infringe is not essential under the [Copyright] Act." *Buck v. Jewel-LaSalle Realty Co.*, 283 U.S. 191, 198, 51 S.Ct. 410, 411, 75 L.Ed. 971 (1931). "Innocent intent should no more constitute a defense in an infringement action, whether statutory or common law, than in the case of conversion of tangible personalty . . . . Copyright would lose much of its value if third parties such as publishers and producers were insulated from liability because of their innocence as to the culpability of the persons who supplied them with the infringing material." 2 *Nimmer on Copyright* § 148, at 660 (1976). Accordingly, the Court rejects defendant Hansen's argument on this ground. Similarly, Magnus Music is not immune from liability as an innocent infringer for the sale of copies it received from Magnus Organ's inventory.

■ Finally, defendant Hansen claims that plaintiffs are estopped from recovering damages because either they knew that Magnus Organ was dealing with Hansen or they should have informed other publishers that plaintiffs terminated their license agreement with Magnus Organ. The Court rejects the first alternative because the Court does not find sufficient evidence presented at trial to justify a finding that plaintiff knew of Magnus Organ's acts with relation to Songbook 703 or that plaintiffs were tardy in protecting their copyrights. In fact, plaintiff Plymouth's general manager and vice president, Bernard Fisher testified that he did not learn of the publications until spring 1975 and the complaint was filed in June 1975.

---

**2.** The Court notes that defendants' disclaimer that plaintiffs' work is derived from the public domain would be more plausible if defendant's excuse related to access to this other public domain material. Here it is undisputed that defendants had access to plaintiffs' material. See *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936); *Italian Book Co. v. Rossi*, 27 F.2d 1014 (S.D.N.Y.1928).

■ The Court finds the second argument to be a variation of Hansen's claim of immunity as an innocent infringer. Defendant Hansen seeks to impose a duty upon copyright owners to notify all persons who may be dealing with prior licensees. The duty, however, was on Hansen to investigate. "It has been stated repeatedly that after notice of copyright has been published everyone is under the duty to learn the facts concerning the copyright, and copies at his peril, . . ." *Chappell & Co. v. Costa*, 45 F.Supp. 554 (S.D.N.Y.1942). Further, this was not an action where the copyright notice was not clearly visible on the copyrighted works. Cf., e. g., *Loomskill, Inc. v. Slifka*, 223 F.Supp. 845 (S.D.N.Y. 1963); *Peter Pan Fabrics, Inc. v. Dixon Textile Corp.*, 188 F.Supp. 235 (S.D.N.Y. 1960).

For the foregoing reasons, the Court concludes that both Magnus Music and Hansen are liable to plaintiffs for copyright infringement.[3]

## DISCUSSION OF DAMAGES

■ Plaintiffs seek statutory damages from defendants. Section 101(b) of the Copyright Act provides:

"If any person shall infringe the copyright in any work protected under the Copyright Laws of the United States such person shall be liable: . . . To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement . . . or in lieu of actual damages and profits, such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion, allow the amount hereinafter stated . . . [not to] exceed the sum of $5000.00 nor be less than $250.00 . . . In the case of any work enumerated in § 5 [which includes musical compositions], $1.00 for every infringing copy made or sold by or found in the possession of the infringer, or his agents or employees." 17 U.S.C. § 101(b) (1976) (amended 1978).

In the present action, plaintiffs have neither proven actual damages nor profits and, therefore, seek statutory "in lieu" damages. However, defendant Hansen claims that it is an innocent infringer from whom plaintiff is not entitled to recover statutory damages. The Court notes that this area is not without dispute and that there is no clear consensus as to the applicable rule. See 2 *Nimmer on Copyright* § 148, at 661 (1976). Upon a review of the authorities cited by defendant, the Court concludes that the better rule in the present case is to allow statutory damages. See *Chappell & Co. v. Costa*, 45 F.Supp. 554 (S.D.N.Y.1942). The present action is not one in which plaintiffs neglected to place their copyright notice on their work, see 1 *Nimmer on Copyright* § 90.14 (1976); or in which the defendant relied on a copyright registration certificate issued to Magnus Organ, see *Gordon v. Weir*, 111 F.Supp. 117 (E.D.Mich.1953), aff'd, 216 F.2d 508 (6th Cir. 1954); or in which the copyright notice appeared in an obscure location likely to be discarded in any further manufacturing process, see *Peter Pan Fabrics, Inc. v. Dixon Textile Corp.*, 188 F.Supp. 235 (S.D.N.Y.1960).

In the present action, defendant Hansen acknowledges notice of plaintiffs' copyrights but contends that it relied on Magnus Organ's representations as to the validity of the licensing agreement, representations of which Hansen has submitted no sufficient evidence. Hansen further claims that even if it had received the licensing agreement it would not have known that the agreement had been terminated by the parties. However, the Court notes that by the time of the printing of the 4,550 copies in question, the five year period of the agreement had already ended and knowledge or lack thereof of any prior termination by the parties to the agreement is therefore immaterial for these purposes.

The Court notes the reasoning in *DeAcosta v. Brown*, 146 F.2d 408 (2d Cir.), cert. denied, 325 U.S. 862, 65 S.Ct. 1198, 89 L.Ed.

**3.** Defendant Magnus Organ is apparently bankrupt and in default in this action.

1983 (1944), that "the inference from the copyright law itself would seem to be most direct, for, while it makes significant distinctions in certain instances based on innocent or willful infringement, as the case may be, it does not do so in the general provisions for award of profits and actual damages, or those statutory sums allowable in the Court's discretion in lieu of actual damages." *Id.* at 410–11. Further "[t]he copying or printing of something which has been lawfully copyrighted has been judicially defined as an infringement of the copyright without any requirement that there be a sale or that profits be made from sale of the copies." *Chappell & Co. v. Costa*, 45 F.Supp. 554, 556 (S.D.N.Y.1942).

Statutory damages, in lieu of actual damages, appear to be particularly appropriate in this instance because the Court notes the apparent difficulty plaintiffs have encountered in proving the number of copies of Songbook 703 which were published or sold by defendants. While plaintiffs were only able to prove that Hansen printed 4,550 copies of Songbook 703 in at most two editions, there was testimony that four separate editions were printed without plaintiffs' permission, and hence, an inference that more than 4,550 copies were printed by Hansen. Compare PX–31, 31A, 33, 34 & 35A.

The Court concludes that statutory damages may properly be awarded in this action. Since the Court has found nine copyrights to have been violated by defendants, the Court awards the sum of $500 multiplied by each infringement, i. e., a total of $4,000 to plaintiff Plymouth and $500 to plaintiff Roncom from defendant Hansen. See *L. A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 105, 39 S.Ct. 194, 63 L.Ed. 499 (1919). Since the parties stipulated that defendant Magnus Music sold only 396 copies, the Court awards plaintiff Plymouth $250 and plaintiff Roncom $250 from defendant Magnus Music.

■ Section 116 of the Copyright Act provides that full costs must be awarded to the prevailing party in a statutory infringement action. 17 U.S.C. § 116 (1976) (amended 1978). Pursuant to § 116, the Court also awards reasonable attorney's fees to plaintiffs in the total amount of $500 from defendants jointly and severally. See *Robinson v. Bantam Books, Inc.*, 339 F.Supp. 150, 157 (S.D.N.Y.1972).

■ Finally, defendants are also enjoined from publishing, distributing, or selling, without authorization, any books containing the copyrighted musical compositions owned by plaintiffs, to wit: "It's Beginning to Look Like Christmas," "Holiday Polka," "Christmas Polka," "Sweeter the Bells Never Ring," "Come to the Stable," "Gentle Jesus Meek and Mild," "Bells of Christmas," "Christmas Party," and "(There's No Place Like) Home for the Holidays."

Submit judgment on five days' notice.

SO ORDERED.