**RE–ALCO INDUSTRIES, INC.,**
A Florida Corporation,
Plaintiff,

v.

**NATIONAL CENTER FOR HEALTH EDUCATION, INC., A New York Not–For–Profit Corporation, Professional Book Distributors, Inc., A Georgia Corporation, Defendants.**

**No. 92 Civ. 1186 (MBM).**

United States District Court,
S.D. New York.

Jan. 29, 1993.

Jay B. Grossman, N. Miami Beach, FL, for plaintiff.

Benito Romano, Lawrence O. Kamin, Wilkie Farr & Gallagher, New York City, for defendant Nat. Center for Health Educ., Inc.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff brings this action alleging violation of federal and New York State antitrust laws, specifically Sections One and Two of the Sherman Act and New York's Donnelly Act. Plaintiff also seeks a

declaratory judgment of noninfringement of defendant NCHE's copyright and invalidation of that copyright. In addition, plaintiff brings claims under New York common law for breach of a constructive trust[1] and promissory estoppel.[2] The case is before me now on defendants' motion to dismiss the Amended Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R.Civ.P. For the reasons set forth below, defendants' motion is granted and the Amended Complaint is dismissed in its entirety.

## I.

Defendant National Center for Health Education ("NCHE") is a nonprofit corporation in the business of disseminating a trademarked health education program called "Growing Healthy." Growing Healthy focuses on elementary school students. It was developed initially in the 1960's under the auspices of the federal government. (Amd Complt ¶ 9(a)) NCHE ultimately packaged the curriculum, trademarked the program under the name Growing Healthy, and copyrighted the manuals.[3] NCHE apparently sought copyright protection to prevent commercial textbook companies from taking over the program. (Amd Complt ¶ 42) Defendant obtained copyright and trademark protection for the program materials in 1986. (Amd Complt ¶ 43)

The Growing Healthy curriculum consists of teacher manuals, student workbooks, and items called "peripherals" packaged for each grade level. (Amd Complt ¶ 48) The peripherals include, for example, videos, posters, and models. (Amd Complt ¶ 48(c)) School districts have flexibility in choosing which elements of the program to purchase and use, depending, presumably, on the health education needs of a particular community and on the community's financial resources. (Amd Complt ¶ 26) Defendant Professional Book Distributors ("PBD") is a textbook distributor which has an exclusive agreement with defendant NCHE to distribute the Growing Healthy manuals. (Amd Complt ¶ 60)

Plaintiff Re–Alco is a for-profit corporation in the business of selling peripherals for the program, including certain so-called "Realia Kits" that it developed and packaged to accompany the program at each grade level. (Amd Complt ¶ 57) Plaintiff entered the business of supplying materials for the Growing Healthy program in 1988, two years after defendant NCHE copyrighted the program. (Amd Complt ¶ 57) Plaintiff claims that it now wants to enter the market as a producer and distributor of the manuals as well. (Amd Complt ¶¶ 53, 107) For that reason, plaintiff seeks a declaration that defendant's copyright on the manuals is invalid.

Plaintiff claims that defendants, by copyrighting the manuals and entering into an exclusive distributorship agreement, are conspiring to restrain trade and attempting to monopolize the Growing Healthy market. Plaintiff further claims that the Growing Healthy[4] materials existed in the public domain, as a result of years of collective effort by educators and administrators, and that NCHE merely played a coordinating role in the latest copyrighted incarnation of the program. (Amd Complt

---

**1.** Constructive trust is actually a remedy, and as such cannot be breached. Therefore, the Amended Complaint will be construed to seek the *imposition* of a constructive trust. Plaintiff acquiesces in this interpretation. (Pl.Mem. at 1)

**2.** Plaintiff has dismissed voluntarily its claim for breach of a resulting charitable trust, denominated Count IV. Plaintiff also has dismissed Count VI, seeking declaratory and copyright invalidation, against defendant PBD only. Thus, the only claims remaining against PBD are the antitrust claims.

**3.** "Manuals" refers both to the teacher manuals and to the student workbooks.

**4.** Before defendant NCHE secured trademark and copyright protection in 1986, the Growing Healthy program existed as two separate programs under different names. (Amd Complt ¶ 33) At the risk of confusing further a factual situation less than clear on the face of the Amended Complaint, I will refer to the program throughout this opinion as the Growing Healthy program. As discussed *infra* with regard to plaintiff's copyright claim, however, the Amended Complaint describes NCHE's program as the latest incarnation, and a consolidation of, the previous programs.

¶ 41) Plaintiff paints a scenario in which NCHE, a nonprofit company, decided to squeeze out legitimate competitors such as Re–Alco. NCHE allegedly accomplished this by obtaining an invalid copyright and entering into an exclusive distribution agreement with a distributor other than plaintiff. That portrayal omits the fact that plaintiff did not enter the market as a peripherals supplier until 1988, two years after NCHE copyrighted the program materials, and has yet to enter the market as a distributor of manuals.

## II.

■ Taking the allegations of the Amended Complaint as true, which I must in deciding a Rule 12(b)(6) motion, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), it does not appear that there is any set of facts plaintiff could prove in support of its complaint that would entitle Re–Alco to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80 (1957), because plaintiff has failed adequately to define the relevant product market, to allege antitrust injury, or to allege conduct in violation of the antitrust laws.

■ A complaint must allege a relevant product market in which the anticompetitive effects of the challenged activity can be assessed. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 29, 104 S.Ct. 1551, 1567, 80 L.Ed.2d 2 (1984); *Nifty Foods Corp. v. Great Atlantic & Pac. Tea Co.*, 614 F.2d 832, 840 (2d Cir.1980). The relevant product market includes all products reasonably interchangeable, determination of which requires consideration of cross-elasticity of demand. *See United States v. E.I. Du Pont de Nemours & Co.*, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).

■ Plaintiff has defined the relevant market solely as the market for the Growing Healthy program. Plaintiff further subdivides that market into a market for manuals and workbooks, a peripherals market, and the "full line market," a combination of the first two. (Amd Complt ¶ 49)

This narrowly tailored market definition is inadequate under antitrust law.

> [O]ne can theorize that we have monopolistic competition in every nonstandardized commodity with each manufacturer having power over the price and production of his own product. However, this power that, let us say, automobile or soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly. Illegal power must be appraised in terms of the competitive market for the product.

*Du Pont*, 351 U.S. at 392–393, 76 S.Ct. at 1006. "[T]he law is clear that the distribution of a single brand, like the manufacture of a single brand, does not constitute a legally cognizable market." *Deep South Pepsi–Cola Bottling Co. v. PepsiCo, Inc.*, 1989–1 Trade Cas. (CCH) ¶ 68,560, 1989 WL 48400 (S.D.N.Y.1989). The *Du Pont* test asks whether there are substitutes reasonably available to buyers, not whether plaintiff has been prevented from selling a particular copyrighted or trademarked product. *See PepsiCo*, 1989–1 Trade Cas. ¶ 68,-560. Plaintiff has failed to make allegations addressing this dispositive issue.

■ The complaint in an antitrust case must allege a basis for finding that commodities which are in some way unique, such as the educational materials in question here, are a market unto themselves. Plaintiff must explain why the market it alleges is in fact the relevant, economically significant product market. If a complaint fails to allege facts regarding substitute products, to distinguish among apparently comparable products, or to allege other pertinent facts relating to cross-elasticity of demand, as the complaint here fails to do, a court may grant a Rule 12(b)(6) motion. *See e.g., Ford Piano Supply Co. v. Steinway & Sons*, 1987–2 Trade Cas. (CCH) ¶ 67,828 at 59,503, 1988 WL 3488 (S.D.N.Y.1988) (holding market defined as one for particular piano parts insufficient to state a claim where complaint failed to allege facts regarding substitutes and cross-elasticity of demand); *Theatre Party Associates, Inc. v. Shubert Organization, Inc.*, 695 F.Supp. 150, 154 (S.D.N.Y.1988) (requiring "a theoretically rational explana-

**392**

tion to support [plaintiff's] proposed relevant product market" of tickets for one particular Broadway show on 12(b)(6) motion); *Gianna Enterprises v. Miss World (Jersey) Ltd.*, 551 F.Supp. 1348, 1354 (S.D.N.Y.1982) (requiring that plaintiff provide at least a theoretically rational explanation for excluding other similar products to beauty pageant at issue on 12(b)(6) motion).

█ Absent an adequate market definition, it is impossible for a court to assess the anticompetitive effect of challenged practices. *Id.* Plaintiff has made no showing why Growing Healthy materials should be considered a market unto themselves, as distinguished from the market suggested by defendants—all health education materials for elementary schools. Plaintiff's Amended Complaint fails to discuss the existence or nonexistence of other health education materials and any relevant differences in demand, and therefore fails to state a claim.

I will take plaintiff at its word that it is not simply a disappointed NCHE distributor (Pl.Mem. at 14), and is a legitimate competitor. However, "[t]he fact that plaintiff chose to operate in a single market ... does not make it a relevant market for antitrust purposes." *Shubert*, 695 F.Supp. at 155. Plaintiff made a business decision to enter the Growing Healthy market after defendant NCHE already had a copyright on the materials and already distributed the manuals through an exclusive arrangement with another company, Temco. Plaintiff sued only after NCHE terminated its agreement with Temco and entered into an exclusive arrangement with PBD. Plaintiff's choice to compete in the narrow market for Growing Healthy materials does not, absent other factually based allegations, support the contention that Growing Healthy is a relevant product market for antitrust purposes.

█ NCHE's monopoly over the Growing Healthy manuals and its exclusive distribution agreement with PBD does not give rise to an inference of an antitrust violation. A manufacturer has a natural monopoly in the sale and distribution of its own products. *PepsiCo*, 1989–1 Trade Cas. ¶ 68,560; *Shubert*, 695 F.Supp. at 155. Because there is no basis in the Amended Complaint for invalidating defendant NCHE's copyright, *see infra*, defendant has a legitimate monopoly over the Growing Healthy manuals.

█ In order to prevail on a monopolization claim, "[p]laintiff[ ] must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (emphasis in original). An exclusive distributorship agreement between a manufacturer and a distributor causing harm to another distributor is not, standing alone, sufficient to show antitrust injury. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir.1987). Rather, there is no violation unless the agreement is intended to or actually does harm competition in the relevant market. *Id.* Antitrust laws "were enacted for 'the protection of *competition* not *competitors.*'" *Brunswick*, 429 U.S. at 488, 97 S.Ct. at 697, *quoting Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962). The intent to harm a particular competitor is not actionable, even if a distributor-competitor is put out of business. *Rutman*, 829 F.2d at 735. *See also Dunn & Mavis, Inc. v. Nu–Car Driveaway, Inc.*, 691 F.2d 241, 243–44 (6th Cir.1982). Therefore, an exclusive distributorship agreement does not give rise to the requisite inference of intent to harm competition. *See Rutman*, 829 F.2d at 736. Even if there were a conspiracy to shut out Re–Alco, there would not necessarily be an antitrust violation absent an anticompetitive effect on the industry as a whole. *See Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 130 (2d Cir.), *cert. denied*, 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978). Accordingly, plaintiff's claims under the Sherman Act are dismissed.

## III.

The Donnelly Act, N.Y.Gen.Bus.L. § 340 (McKinneys 1991), was modeled on the Sherman Act, *see State v. Mobil Oil Corp.*, 38 N.Y.2d 460, 381 N.Y.S.2d 426, 344 N.E.2d 357 (1976), and generally is construed in accordance with the federal Act. *Anheuser–Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 335, 520 N.E.2d 535, 539, 525 N.Y.S.2d 816, 820 (1988). Plaintiff has failed to identify any "State policy [or] differences in the statutory language or the legislative history" that would justify construing the Donnelly Act differently from the Sherman Act in this case. *See id.* In fact, New York courts also have recognized the necessity of identifying the relevant product market. *See, e.g., Creative Trading Co. v. Larkin–Pluznick–Larkin, Inc.*, 136 A.D.2d 461, 462, 523 N.Y.S.2d 102, 103 (1st Dep't.1988). Therefore, plaintiff's claim under New York law is dismissed also for the reasons outlined above.

## IV.

Re–Alco's copyright claim alleges that plaintiff is about to go into the business of publishing Growing Healthy manuals, apparently identical copies of defendants' manuals, and seeks a declaration that plaintiff would not be infringing defendant's copyright. Plaintiff relies rather imprecisely on the theory that the manuals were in the public domain and that NCHE improperly obtained a copyright on them.

Plaintiff has failed to allege that NCHE is not the author of the Growing Healthy curriculum as copyrighted or that its contributions to that curriculum were either nonexistent or trivial within the meaning of copyright case law. Therefore, plaintiff fails to state a cognizable claim. Even if plaintiff had stated a valid claim for copyright invalidation, plaintiff would not be entitled to a declaratory judgment because it has failed to allege the imminence of its production. Moreover, because plaintiff has failed to plead adequately its claim for copyright invalidity, it cannot now get a declaratory judgment that its manuals, which apparently will be identical copies of NCHE's Growing Healthy books, will not infringe defendant NCHE's copyright.

Plaintiff bears the burden proof to overcome the prima facie validity of NCHE's copyright. *See Plymouth Music Co. v. Magnus Organ Corp.*, 456 F.Supp. 676, 679 (S.D.N.Y.1978). Plaintiff bears a heavy burden because copyright law, unlike patent law, recognizes protectable originality at a very low threshold, including works that reproduce or derive from information, material, or previous works in the public domain. *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 102–103 (2d Cir.1951). The Court in *Alfred Bell* specifically noted that compilations are "noticeable examples" of the fact that "[o]riginality . . . means little more than a prohibition of actual copying." *Id.* Therefore, "[a] copy of something in the public domain will support a copyright if it is a distinguishable variation." *Id.*

Although *Alfred Bell* involved a reproduction of a mezzotint, the principles enunciated there by the Second Circuit are applicable to compilations and derivative works such as the books at issue in the case at hand. A copyright is invalid only if the subject work shows no originality—that is, if the copyrighted work is in no way a "distinguishable variation" on something already in the public domain. *Alfred Bell*, 191 F.2d at 102–103. "All that is needed for a finding of sufficient originality is a 'distinguishable variation' that is not merely trivial, even if the copyrighted work is based on prior copyrighted or public domain works." *Merritt Forbes & Co. v. Newman Invest. Secur., Inc.*, 604 F.Supp. 943, 951 (S.D.N.Y.1985) (citations omitted). Further, the "selection and ordering of particular facts or elements" can provide the basis for a finding of originality. *Id.* (citations omitted). *See also Weissmann v. Freeman*, 868 F.2d 1313, 1321 (2d Cir. 1989), (holding district court erred in finding copyright invalid where derivative work that evolved from prior works jointly authored involved rearrangement and a few new additions), *cert. denied*, 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989), citing *Wainwright Secur., Inc. v. Wall Street*

*Transcript Corp.*, 558 F.2d 91, 95–96 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978); *Key Publications, Inc. v. Chinatown Today Pub. Enterprises, Inc.*, 945 F.2d 509 (2d Cir. 1991) (holding sufficient originality existed in selection and ordering of information in Chinese–American telephone directory).

In view of the low threshold of originality necessary to protect variations on works in the public domain, it is not unreasonable to require that a plaintiff allege that disputed works are indistinguishable in other than trivial ways from unprotectable material in the public domain, particularly when plaintiff has alleged that defendant NCHE was responsible for revising the materials at issue. (Amd Complt ¶ 29–30, 41(a)) Therefore, taking plaintiff's allegations as true that the Growing Healthy's predecessor materials were in the public domain, arguably a conclusion of law not entitled to a presumption of truth, plaintiff still has failed to plead its case because it has not asserted that NCHE's copyrighted version is not a distinguishable variation. In fact, despite the vagueness of the Amended Complaint as regards the material at issue, it appears reasonably clear even from the complaint that NCHE did indeed produce a distinguishable, revised, renamed program. For example, plaintiff states that NCHE has had responsibility for the Growing Healthy program from the late 1970's to date. (Amd Complt ¶¶ 29–30) Plaintiff states that revisions to the program occurred several times during this period, and that "NCHE was a part of the revision process, but by no means developed the contents or managed the process of creating the revised ... programs." (Amd Complt ¶ 41(a))

Plaintiff's claim that NCHE did not manage the process or develop the program is inconsistent with its allegation that NCHE had responsibility for the program. Plaintiff apparently wants the court to find that NCHE controlled the program, thereby shutting plaintiff out of the market in violation of the antitrust laws, but that at the same time NCHE did not direct or control the program sufficiently to warrant its obtaining a copyright. Because of the low threshold set by copyright law for originality in authorship, plaintiff's allegations are inconsistent and insufficient. Although plaintiff states that the revisions in 1986 were "minor," it also states that the two previous programs were renamed as one joint program. (Amd Complt ¶ 41(b)) Plaintiff does not allege facts that would allow a fact finder to conclude that the "minor" revisions were in fact "trivial" within the meaning of copyright law. Plaintiff states in its memorandum to the court that neither defendant was an author of the materials and that neither contributed even a trivial variation to the program's structure or content. (Pl.Mem. at 36) That statement is inconsistent with the language and logic of the Amended Complaint and, in any event, is not part of the pleadings and may not be considered. *Cf. Ortiz v. Regan*, 749 F.Supp. 1254, 1263 (S.D.N.Y.1990) (statements in a brief are not evidence).

Plaintiff maintains somewhat mysteriously that the program was actually the result of the work of the "Creators." (Amd Complt ¶ 9(b)) The Amended Complaint is vague about the manner in which the current Growing Healthy program developed, especially in light of its attempt to claim that defendant NCHE had next to nothing to do with it, but what is fairly clear is that the program evolved over a number of years, with the input of different authors. Therefore, *Weissmann* provides useful guidance, as that case also involved the validity of a copyright on a derivative work that had evolved from collective efforts over a number of years. In *Weissmann*, 868 F.2d 1313, the validity of the copyright was challenged by another legitimate author. The Second Circuit in that case made clear that minor revisions to someone else's work could result in a new valid copyright. *Id.* at 1321. In the case at hand, plaintiff does not even complain of the appropriation of its own work and acknowledges defendant's role of "responsibility" in the development of previous incarnations of the program as well as the current trademarked Growing Healthy curriculum. Plaintiff simply asserts no ba-

sis on which to invalidate NCHE's copyright.

In addition to plaintiff's claim that NCHE's copyright is invalid, plaintiff seeks a declaration that publication of its own manuals would not infringe NCHE's copyright. This claim necessarily depends on a finding that the copyright is invalid because plaintiff wants to publish identical manuals. The Declaratory Judgment Act requires that an "actual controversy" exist before a federal court can grant declaratory relief. 28 U.S.C. § 2201. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). Defendant cites several patent cases in support of its contention that plaintiff has failed to allege the existence of an actual controversy at this stage.

Because plaintiff wants to publish identical copies of defendant's manuals, declaratory judgment of noninfringement would be inconsistent with my determination that plaintiff has failed to allege that defendant's copyright is invalid. Although copyright law provides a low threshold for originality, it does prevent outright copying. *See, e.g., Alfred Bell*, 191 F.2d at 102–103. Further, even if plaintiff had stated a claim for copyright invalidation, a declaratory judgment would be inappropriate in this case because plaintiff has failed to meet the requirements for obtaining declaratory relief.

In *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207 (7th Cir.1980) the court laid out two requirements for the existence of a justiciable controversy in this setting: 1) "the defendant must have engaged in conduct giving rise to a reasonable apprehension on plaintiff's part that it will face an infringement suit or threat of one if it commences or continues the activity in question;" and 2) "the plaintiff must have actually produced the accused article or have engaged in preparations for production such that [plaintiff could begin production immediately]." *Id.* at 1210. *See also Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 90 (2d Cir.1963) (holding that "where there is no actual manufacture, use, or sale, and no immediate inten-

tion and ability to practice the invention, there is no justiciable controversy").

Intention and ability must be decided on a case by case basis. *International Harvester*, 623 F.2d at 1215. The burden is on the plaintiff to support its allegation that the court has jurisdiction under the Declaratory Judgment Act. *Id.* at 1210. Even if I were to hypothesize that defendant's copyright ultimately would be invalidated, although not through the Amended Complaint in the case at bar, plaintiff has failed to plead a justiciable controversy because it has not established that it would immediately begin production. Plaintiff's submission of estimates from printers (*See* Att. to Sinnreich Aff.) is insufficient to prove that it would immediately begin production. Indeed, one of the letters submitted by plaintiff from a publisher states that "[t]o the best of my knowledge the project was put on hold due to costs in excess of one million dollars." (Ltr fr. K. Beers att. to Sinnreich Aff.) Further, the "contract" with Focus on Education that plaintiff attaches to its submission is meaningless as it has not been signed by either party.

Therefore, plaintiff's action for a declaratory judgment and invalidation of defendant's copyright is dismissed.

## V.

Because I dismiss plaintiff's claims under the federal antitrust and copyright laws, plaintiff's state law claims, jurisdiction over which is alleged to arise through principles of pendency and by virtue of the governing federal statutes, will be dismissed. Even if this court had jurisdiction over those claims, they fail as a matter of law. Plaintiff's claims of breach of constructive trust and promissory estoppel stretch the bounds of law and of reason.

Plaintiff sues for "breach" of a constructive trust. Constructive trust is a remedy. Even liberally construed as a claim for imposition of such a trust, however, plaintiff's claim fails. Constructive trust is a remedy to rectify fraud and prevent unjust enrichment. *Bankers Secur. Life Ins. Soc. v. Shakerdge*, 49 N.Y.2d 939,

940, 406 N.E.2d 440, 441, 428 N.Y.S.2d 623, 624 (1980). A constructive trust is imposed in the context of the breach of a fiduciary relationship. Generally, in New York, one is imposed only where there is: "1) a confidential or fiduciary relation, 2) a promise, express or implied, 3) a transfer made in reliance on that promise, and 4) unjust enrichment." *Id.* (citations omitted).

■ Plaintiff has failed to allege facts on which to find a breached fiduciary relationship warranting the imposition of a constructive trust. That doctrine is simply not applicable here. NCHE's copyright and exclusive distribution agreement for the Growing Healthy materials do not constitute fraud or the breach of some duty owed to plaintiff, who entered the market as a supplier of peripherals for the Growing Healthy program two years after NCHE copyrighted the program and while NCHE already had an exclusive distribution agreement in place with another company. Therefore, plaintiff's claim seeking imposition of a constructive trust, liberally construed, must be dismissed.

■ The elements of promissory estoppel under New York law are: "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance." *Ripple's of Clearview, Inc. v. Le Havre Associates,* 88 A.D.2d 120, 452 N.Y.S.2d 447, 449 (2d Dep't.1982). It is not clear on the face of the Amended Complaint what promise defendant made to plaintiff. Plaintiff complains that NCHE "impliedly covenanted [*inter alia*] to maintain the Growing Healthy program in the best interests of the program and its beneficiaries." (Amd Complt ¶ 112) Plaintiff apparently means by this that NCHE owed some duty to plaintiff to allow plaintiff to compete in the market. Re–Alco claims that "[p]laintiff realized a second distributor would further disseminate Growing Healthy and benefit the program's operation, by adding, *inter alia,* quality, ingenuity and price competition." (Amd Complt ¶ 114) This language does not state a claim. Plaintiff has alleged no facts supporting its contention that it relied reasonably and foreseeably on any sort of promise, much less a clear and unambiguous promise by defendant. Therefore, plaintiff's claim of promissory estoppel also is dismissed.

\* \* \*

For the reasons discussed above, and in view of the fact that plaintiff has already had one opportunity to replead, plaintiff's Amended Complaint is dismissed in its entirety with prejudice.

SO ORDERED.