**EATONI ERGONOMICS,
INC., Plaintiff,**

v.

**RESEARCH IN MOTION CORP.
and Research in Motion
Ltd., Defendants.**

No. 08 Civ. 10079 (WHP).

United States District Court,
S.D. New York.

Dec. 5, 2011.

706

Eric W. Berry, Esq., Berry Law PLLC, New York, NY, for Plaintiff.

Craig D. Leavell, Esq., Kirkland & Ellis LLP, Chicago, IL, for Defendants.

## MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiff Eatoni Ergonomics, Inc. ("Eatoni") amends its complaint against Defendants Research In Motion Corporation and Research In Motion Ltd. (collectively, "RIM") to assert exclusively violations of § 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, and New York's Donnelly Act, N.Y. Gen. Bus. Law § 340. RIM moves to dismiss the amended complaint for failure to state a claim. For the following reasons, RIM's motion to dismiss is granted and the amended complaint is dismissed with prejudice.

## BACKGROUND

### I. Factual Background

This motion to dismiss is the latest installment in a contentious litigation. The

underlying allegations are described in detail in a prior Memorandum and Order. *See Eatoni Ergonomics, Inc. v. Research in Motion Corp.*, 633 F.Supp.2d 109, 112–13 (S.D.N.Y.2009). In summary, this litigation arises from a 2005 mediation settling a patent dispute between the parties. Eatoni has a patent on the "reduced QWERTY" keyboard and supporting software (the '317 Patent). (Amended Complaint of Eatoni Ergonomics, Inc. dated June 7, 2011 ("Compl.") ¶ 19.)

In 2005, RIM filed a declaratory judgment action in the United States District Court for the Northern District of Texas seeking a declaration that RIM's devices did not infringe Eatoni's patent. (Compl. ¶ 27.) On September 26, 2005, the parties agreed to settle their differences. (Compl. ¶ 29.) But shortly after the settlement agreement was executed, the parties began sparring. After RIM moved to dismiss the Texas action, the district judge stayed the case and ordered arbitration. (Compl. ¶ 40.) Following arbitration, the parties collaborated to develop a mutually agreed-upon product. (Compl. ¶ 47, 49.) In March 2008, RIM informed Eatoni that its product management team had rejected the initial joint design. (Compl. ¶ 70.) On November 26, 2008, Eatoni filed this action, alleging breach of contract, fraud, breach of fiduciary duty, patent infringement, and antitrust claims.

## II. *Procedural History*

By Memorandum and Order dated June 24, 2009, this Court determined that some of Eatoni's claims were subject to mandatory arbitration. *See Eatoni*, 633 F.Supp.2d 109, 116 (S.D.N.Y.2009) ("Eatoni's claims for breach of contract must be arbitrated. So too, Eatoni's fraud claim appears to be an effort to re-litigate its fraudulent inducement claim—a claim that Eatoni conceded in the Texas Action clearly falls within the scope of this arbitration clause. Finally, the breach of fiduciary duty claims are merely an attempt to recast breach of contract claims as tort claims."). This Court stayed Eatoni's remaining antitrust and patent infringement claims because they "either will be completely resolved or greatly simplified" by the arbitration. *Eatoni*, 633 F.Supp.2d at 116.

In 2010, an arbitrator denied all of Eatoni's breach of contract and fraud claims and dismissed certain remaining claims as moot. (Motion to Vacate Arbitration Awards dated November 2, 2010, Ex. 2 (the "2010 Award")) (ECF No. 36). The 2010 Award required the parties to continue to work cooperatively towards development of a tripod patent application. If, however, RIM disavowed interest in that application, the 2010 Award directed Eatoni to work with RIM to revise the design or pursue it without RIM.

This Court confirmed the 2010 Award on June 1, 2011. On June 7, 2011, Eatoni amended its complaint to assert only its antitrust claims.

## DISCUSSION

Eatoni alleges that RIM possesses a monopoly in the markets for "QWERTY smartphones" and "reduced QWERTY smartphones." (Compl. ¶ 76.) Specifically, Eatoni claims that RJM engaged in a course of anticompetitive conduct that served to "lock in" RIM's market dominance at the expense of other potentially superior technologies. Eatoni also alleges that RJM deprived it of an "essential facility" (i.e., access to RIM's devices).

## I. *Legal Standard*

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ash-*

*croft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S.Ct. at 1949 (citation omitted).

## II. *Antitrust Violations under Sherman Act § 2 and the Donnelly Act*

### A. *Standard*

■ To state a claim under § 2 of the Sherman Act, "a plaintiff must establish '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior business product, business acumen, or historic accident.'" *PepsiCo, Inc. v. Coca–Cola Co.,* 315 F.3d 101, 105 (2d Cir.2002) (per curiam) (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)). A showing of anticompetitive conduct is crucial. *See Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 407, 124 S.Ct. 872, 157 L.Ed.2d 823 (2004) ("To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*") (emphasis in original). New York's Donnelly Act is modeled on the Sherman Act and is construed in accord with federal precedent. *See Re–Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.,* 812 F.Supp. 387, 393 (S.D.N.Y.1993). Thus, both Eatoni's Sherman Act and Donnelly Act claims can be resolved in the same discussion.

RIM does not dispute Eatoni's allegation that it is a monopolist. Rather, RIM contends that Eatoni has not adequately shown that it engaged in anticompetitive conduct. *See Trinko,* 540 U.S. at 407, 124 S.Ct. 872. Eatoni advances four arguments in response. First, Eatoni contends that RIM's alleged patent infringement was an anticompetitive attempt to keep Eatoni out of the smartphone market. Second, Eatoni argues that RIM's reluctance and ultimate refusal to work jointly with Eatoni to develop a new product constituted an unlawful refusal to deal. Third, Eatoni claims that all of RIM's actions taken together constitute a single anticompetitive "course of conduct." Finally, Eatoni asserts that RIM's refusal to deal deprived Eatoni of an "essential facility."

### B. *Patent Infringement*

Eatoni contends that RIM violated § 2 of the Sherman Act by misappropriating Eatoni's '317 patent, manufacturing devices with Eatoni's technology, and preventing Eatoni from licensing its invention to one of RIM's competitors.

To support its argument, Eatoni relies almost exclusively on a theoretical discussion in a treatise suggesting that "[i]n some limited circumstances, the costs the intellectual property infringement impose on intellectual property owners can create significant barriers to entry, facilitating maintenance of monopoly power." Herbert Hovenkamp et al., IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law 11–59 (2d ed. 2010). Eatoni also seeks support in *Automotive Products, plc v. Tilton Engineering, Inc.,* No. CV 90–5500, 1993 WL 660164, at *1 (C.D.Cal. Sept. 16, 1993), but that case merely concerned an award of attorney's fees.

■ However, this Court has not found any case in which patent infringement has been considered anticompetitive conduct. *See Masimo Corp. v. Tyco Health Care Grp., L.P.,* No. CV 02–4770, 2004 WL

5907538, at *12 (N.D.Cal. June 10, 2004). And this Court declines Eatoni's invitation to break new doctrinal ground. Even assuming that a campaign of patent infringement could violate the antitrust laws in certain circumstances, Eatoni has not plausibly alleged that RIM's purported infringement imposed substantial costs or barriers to entry.

■ Moreover, Eatoni granted RIM a license to the '317 Patent in connection with the settlement agreement, and Eatoni released all claims relating to patent infringement. On September 26, 2005, the parties executed a settlement agreement granting RIM a license to the '317 Patent and a "full and complete" release of claims, including any "past, current, or future claims" for patent infringement. Eatoni also granted RIM a release from "all claims and counterclaims that were asserted or could have been asserted in the pending litigation."

Thus, any antitrust violation stemming from RIM's alleged patent infringement is plainly encompassed by the terms of the releases executed as part of the 2005 settlement agreement and Eatoni may not raise such a claim now. Accordingly, Eatoni fails to state an antitrust claim arising from RIM's alleged infringement of the '317 Patent.

### C. Refusal to Deal

Eatoni also alleges that, after executing the settlement agreement, RIM maintained its monopoly power by acting in bad faith in its joint product development efforts and, ultimately, refusing to work with Eatoni at all. RIM counters that the arbitrator has already concluded that RIM's conduct in the joint development did not breach any duties to Eatoni. Further, RIM contends that the antitrust laws do not impose a duty on RIM to work with Eatoni to develop a new product.

Typically, unilateral refusals to deal are lawful. See In re Elevator Antitrust Litig., 502 F.3d 47, 52–53 (2d Cir.2007) (per curiam) (quoting Trinko, 540 U.S. at 408, 124 S.Ct. 872) ("[A]s a general matter, the Sherman Act does not restrict the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.") (internal citations and punctuation omitted). While Eatoni recognizes this fundamental antitrust principle, it cites the Supreme Court's opinion in Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 603, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985), for the proposition that a monopolist's refusal to deal is anticompetitive where the parties were previously engaged in a "cooperative venture."

■ But Eatoni's attempt to fit its claim within the ambit of Aspen Skiing is unavailing. In Aspen Skiing, the parties had worked together profitably for years before the defendant terminated the relationship with no apparent business justification. See Trinko, 540 U.S. at 409, 124 S.Ct. 872 (describing Aspen Skiing). Here, by contrast, the parties attempted for less than a year to develop a potential product with uncertain business prospects. RIM's refusal to deal with Eatoni does not, therefore, stand on the same footing as the defendant's refusal in Aspen Skiing, which constitutes "the sole exception to the right of refusal to deal." In re Elevator, 502 F.3d at 54. As such, Eatoni's speculation about RIM's motives is irrelevant. Because "Aspen Skiing is at or near the outer boundary of § 2 liability," Trinko, 540 U.S. at 409, 124 S.Ct. 872, RIM's refusal to deal falls a fortiori within the bounds of lawful business conduct.

### D. Course of Conduct

Eatoni argues that even if RIM's alleged patent infringement and its refusal to deal

are not in and of themselves anticompetitive, this Court should evaluate RIM's actions as a single anticompetitive "course of conduct." In response, RIM maintains that each act underlying an allegedly anticompetitive "course of conduct" must itself be anticompetitive for antitrust liability to attach. *See United States v. Microsoft Corp.*, 253 F.3d 34, 78 (D.C.Cir.2001) (rejecting finding of antitrust liability based on a "course of conduct" comprised of acts "not in themselves unlawful").

■ Eatoni relies heavily on the Supreme Court's statement that an antitrust plaintiff "should be given the full benefit of [its] proofs without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698–99, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). But Eatoni does not, and cannot, cite any authority for the proposition that a series of unilateral acts that do not violate the antitrust laws may be aggregated into an unlawful "course of conduct." To begin with, the language Eatoni cites from *Continental Ore* does not concern unilateral conduct, but rather the method of evaluating "[t]he character and effect of a conspiracy." *See* 370 U.S. at 699, 82 S.Ct. 1404 (quoting *Am. Tobacco Co. v. United States*, 147 F.2d 93, 106 (6th Cir.1945)) (internal citation omitted). More importantly, *Continental Ore* does not stand for the unworkable proposition that business conduct that does not offend the antitrust laws may violate the Sherman Act once it is combined with other lawful business conduct. Put differently, courts need not resolve the sorites paradox and determine precisely how many grains of sand constitute a heap. *See* Ethan J. Leib, *Contracts and Friendships*, 59 Emory L.J. 649, 664 n.38 ("One might think 10,000 grains of sand make a heap. Yet, since (1) one grain of sand is no heap and (2) for every n grains of sand that are not heaps, n + 1 grains of sand will also not be a heap, there are no heaps.").

■ Neither RIM's alleged patent infringement nor its refusal to collaborate with Eatoni constituted anticompetitive conduct. Because the sum of zero and zero is zero, Eatoni's "course of conduct" theory fails. Thus, Eatoni's argument that its infringement-related injuries only "accrued" after RIM completed its "course of conduct" is irrelevant. And because Eatoni fails to state a claim, this Court expresses no opinion regarding the preclusive effect, if any, of the 2010 Award.

### E. *Essential Facility*

■ Finally, Eatoni claims that RIM deprived it of an "essential facility" by refusing to provide it with access to RIM's proprietary Blackberry platform. Eatoni's claim fails, however, because RIM was not required to share its intellectual property. *See SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1204 (2d Cir.1981) ("[T]he antitrust laws [do not] require a patent holder to forfeit the exclusionary power inherent in his patent[.]"); *see also Applera Corp. v. MJ Research, Inc.*, 349 F.Supp.2d 338, 348 (D.Conn.2004) ("To find a patent an 'essential facility' to which [a company] must provide access would subvert the plain meaning and purpose of the Patent Act."). Further, Eatoni has not plausibly alleged that RIM's products are "essential" for Eatoni's keypad technology. As Eatoni recognizes, several other companies manufacture smartphones, including Samsung, HTC, Motorola, Sony Ericsson, Nokia, and T–Mobile. (Compl. ¶ 77.) Plainly, RIM's Blackberry platform is not "essential" to Eatoni.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss this action is granted

and the amended complaint is dismissed with prejudice. The Clerk of the Court is directed terminate all pending motions and mark this case as closed.

SO ORDERED.