NORTH AMERICAN ENERGY SYS-
TEMS, LLC, Jeffrey A. Albano
and Gregory Hudson

v.

NEW ENGLAND ENERGY MANAGE-
MENT, INC., Scott Hinson, Michelle
Gallicchio, Northeast Utilities Service
Company, Inc., the Connecticut Light
& Power Company and the Western
Massachusetts Electric Company

No. 3:01CV1230 (AHN).

United States District Court,
D. Connecticut.

Sept. 13, 2002.

Louis A. Craco, Jr., Allegaert, Berger & Vogel, New York, NY, for Plaintiff.

Ira B. Grudberg, David L. Belt, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, James Sicilian, Michael P. Shea, Day, Berry & Howard, Hartford, CT for Defendant.

## RULING ON MOTION TO DISMISS

NEVAS, District Judge.

The plaintiffs, North American Energy Systems, LLC ("NAES"), Jeffrey Albano ("Albano") and Gregory Hudson ("Hudson"), bring this action against the defendants New England Energy Management, Inc. ("NEEM"), Scott Hinson ("Hinson"), Michelle Gallicchio ("Gallicchio"), Northeast Utilities Service Company, Inc. ("NUSCO"), the Connecticut Light & Power Company ("CL & P") and the Western Massachusetts Electric Company ("WMECO") (collectively, "NU") alleging violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2. Plaintiffs also bring state law claims for intentional interference with prospective economic advantage and for violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42–110b et seq. ("CUTPA").

Now pending before the court are defendants' Motions to Dismiss. For the following reasons, the motions [doc. # s 12 & 14] are GRANTED.

## STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Still v. DeBuono,* 101 F.3d 888 (2d Cir.1996). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn. 1990) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). In deciding such a motion, consideration is limited to the facts stated in the complaint or in documents attached thereto as exhibits or incorporated therein by reference. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

## FACTS

According to plaintiffs' Amended Complaint, various companies of the Northeast Utilities System developed the Small Business Energy Advantage Program (the "Small Business Program") to help small businesses reduce their costs and improve performance by installing more energy efficient equipment and determining ways to reduce energy demands. NU elected to use a network of "Contractor/Arrangers" ("C/As") to locate eligible businesses, evaluate their needs and provide the cost reducing services. Prospective C/As have to be approved by NU prior to participating in NU's Small Business Program.[1]

---

**1.** Nothing, however, prevents an individual or    firm from offering these same services to

Under the terms of the Small Business Program, the defendant utility companies bear some portion of the customers' costs and also offer interest free loans to the customers to cover the costs of the Small Business Program, including the C/A fees. The source of the loans come from a fund established from ratepayers' fees. Customers of the Small Business Program continue to pay their usual rates until the loans are paid in full. It is anticipated that the savings in energy costs will cover the cost of loan repayment.

NU stated in its description of the Small Business Program that it maintains the right to limit the number of C/As and that the goal is to keep the number to a minimum in order to facilitate close relationships with the utility companies, ensure customer satisfaction and promote communication with all parties involved in the transactions.

In March 2001, NAES responded to a request by NU for proposals to serve as C/As for one year beginning April 2001. The proposal described NAES's qualifications and listed plaintiffs Albano and Hudson among NAES's employees. At the time, Albano and Hudson were employed by NEEM, which performed a significant amount of C/A work under the Small Business Program. According to their complaint, Albano and Hudson planned to resign from NEEM once NU approved NAES's proposal. On March 23, 2001, Albano spoke with a representative of NU to determine the status of the NAES proposal. The representative told him that it "looked good." Later, Gallicchio, Senior Program Administrator of Marketing and Conservation Programs with NU, telephoned NAES to determine whether Albano and Hudson were in fact employed by NAES. Arnold Frumin, the President of NAES explained their status and plans to

these businesses independent of NU's Small

her. Gallicchio allegedly told Frumin that the NAES application would be denied because certain requested information had not been provided. When asked for an opportunity to supplement the proposal, Gallicchio referred him to Maureen Bazan, also an employee of NU, who agreed to allow the additional submission. In early April 2001, Ms. Bazan wrote to NAES informing it that the application had been denied for failure to comply with the Request for Quotations. NAES again resubmitted a proposal, which was denied in late April.

Upon learning of Albano and Hudson's plans to join NAES, Hinson, owner and president of NEEM, fired them both.

Plaintiffs allege that defendant NEEM has colluded with the defendants to prevent other potential C/As from being approved by NU and that such collusion has thwarted competition in the market for C/A services to otherwise qualified businesses and individuals. Plaintiffs contend that since the inception of the Small Business Program, NU has allocated the majority of the C/A assignments to NEEM. Defendants' actions have resulted in the exclusion of plaintiffs from the market and have damaged the public by "frustrat[ing] the laudable goals of the Program." (Pl.'s Compl. ¶ 4.)

## DISCUSSION

### I. The Antitrust Claims

NU asserts that plaintiffs antitrust claims should be dismissed because (1) the complaint fails to allege a relevant market and (2) the complaint does not allege anticompetitive effects or antitrust injury. The court agrees.

Business Program.

### A. The Complaint Does Not Properly Allege a Relevant *Market*

■■ A plaintiff claiming a violation of §§ 1 & 2 of the Sherman Act must allege a relevant geographic and product market in which trade was unreasonably restrained or monopolized. *See Kramer v. Pollock–Krasner Found.,* 890 F.Supp. 250, 254 (S.D.N.Y.1995); *see also United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). The burden of defining the relevant market falls to the plaintiff. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430, 436 (3d Cir.1997); *Hack v. Yale President & Fellows of Yale College,* 16 F.Supp.2d 183, 196 (D.Conn.1998). In order to make out their antitrust claims, plaintiffs "must allege a relevant product market in which the anticompetitive effects of the challenged activity can be assessed." *Re–Alco Indus., Inc. v. National Ctr. for Health Educ., Inc.,* 812 F.Supp. 387, 391 (S.D.N.Y.1993) (citation omitted).

■■ "The relevant product market includes all products reasonably interchangeable, determination of which requires consideration of cross-elasticity of demand." *Id.* "Interchangeability implies that one product is roughly equivalent to another for the use to which it is put: while there may be some degree of preference for one over the other, either would work effectively." *Allen–Myland, Inc. v. International Business Mach. Corp.,* 33 F.3d 194, 206 (3d Cir.1994) (internal quotations omitted). To determine whether the complaint's proposed relevant market definition is legally sufficient, a court must analyze "not [the] commodities reasonably interchangeable by a particular plaintiff, but commodities reasonably interchangeable by consumers for the same purposes." *Hack,* 16 F.Supp.2d at 196 (quoting *Queen City Pizza, Inc.,* 124 F.3d at 438).

Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted. *Queen City Pizza,* 124 F.3d at 436; *see also Hack,* 16 F.Supp.2d at 196 (stating that a complaint may be dismissed where it does not define the relevant market by reference to the rule of reasonable interchangeability and cross-elasticity); *Tower Air, Inc. v. Federal Exp. Corp.,* 956 F.Supp. 270 (E.D.N.Y.1996) (same); *Re–Alco,* 812 F.Supp. at 391 (same); *E. & G. Gabriel v. Gabriel Bros., Inc.,* No. 93 civ. 0894(PKL), 1994 WL 369147, at *3 (S.D.N.Y. July 13, 1994) (same).

In the Amended Complaint, plaintiffs briefly address these key issues of "reasonable interchangeability" and "cross-elasticity of demand;" however, it fails to sufficiently define the relevant market. Plaintiffs allege that NU's subsidies "permit the delivery to eligible customers of services under the Program at no cost or at greatly reduced cost" and that such services are not interchangeable with similar services provided outside the Small Business Program at significantly higher costs to the customer. (Pl.'s Compl. ¶ 22.)

■■ Though price is a factor to be considered in assessing interchangeability, it is not the sole consideration. *See Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 722 (3d Cir.1991). Plaintiff's attempt to establish a market consisting only of services provided through NU's Small Business Program based on price differential is misplaced and defines the market too narrowly. The only difference identified by

plaintiffs between C/A services through the Small Business Program and those that could be provided independent of the Small Business Program is in the cost to the customer. A relevant product market, however, may span a range of prices. *See Brown Shoe Co., Inc. v. United States,* 370 U.S. 294, 326, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962)(rejecting argument that medium-priced shoes are in a different product marked than lower-priced shoes); *AD/SAT v. Associated Press,* 181 F.3d 216, 228 (2d Cir.1999)("[W]e are not persuaded that the difference in prices for rush electronic and non-rush delivery services indicates that distinct markets for these services exist.").[2]

Plaintiffs also attempt to argue that NU has created a market by using outside firms to provide the conservation services. Even though NU is not required to use C/As to provide conservation services, plaintiffs imply that because NU has chosen to do so, it has created a market with the concomitant obligation to contract with all willing suppliers. Defendants argue that such a theory would result in the creation of a new market anytime NU, or any entity, hires an outside source to perform needed services, such as providing security or fixing office equipment. NU would risk creating a monopoly if it did not distribute the work evenly among the outside service providers.

Plaintiff likens this to a "government contracting situation" where there may exist a single buyer market. This is inapposite. In the context of government as a single buyer, the government is subject to competitive bidding requirements imposed by the Federal Acquisition Regulations.

That is not the case with NU. It is under no obligation to hire any outside source to perform the conservation services and has no requirements in the event it chooses to do so.

The government contracting cases relied upon by the Plaintiffs are easily distinguishable from the case at hand. In the cases involving the government, the government was not the entity violating the antitrust laws; rather, the violators were the companies bidding on the government contract. For example, in *Tower Air, Inc. v. Federal Express Corp.,* 956 F.Supp. 270, 281 (E.D.N.Y.1996), the charge was that the bidders for the government contract engaged in anticompetitive activity among themselves, not with the government (buyer). If NU is the buyer, it is in a position similar to the government and could not be the target of antitrust liability.

Plaintiffs have failed to establish that outsourcing the provision of conservation services has created a relevant market under the antitrust laws.

**B.    The Complaint Fails to Allege an Anticompetitive Effect *or Antitrust Injury***

Defendants next argue that because plaintiffs have failed to allege that the purported monopoly has had an actual adverse effect on competition in the provision of energy conservation services, they cannot establish anticompetitive effects in a relevant market. The court agrees.

▆▆▆▆ In order to have standing to bring a private antitrust action, a plaintiff must allege more than just a personal injury. *See Balaklaw v. Lovell,* 14 F.3d

---

**2.** Defendants note that by distinguishing between NU C/A services and non-NU C/A services "Plaintiffs have argued themselves out of the realm of antitrust law altogether." If customers of the Small Business Program would not purchase conservation services unless the services were free, then there exists in reality no market for such services and no opportunity to create a monopoly.

793, 797 (2d Cir.1994); *George Haug Co.,* 148 F.3d at 139. An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). In examining this requirement, a court must keep in mind "the fundamental tenet that [t]he antitrust laws ... were enacted for the protection of *competition,* not *competitors.*" *Balaklaw,* 14 F.3d at 797 (citations and internal quotation marks omitted).

Plaintiffs fail to assert an antitrust injury. They make the conclusory allegation that defendants have colluded "to prevent other potential C/As from receiving approval, thereby thwarting competition in the market for the provision of C/A services...." (Pl.'s Compl. ¶ 4.) They also assert that the public has been injured because "NEEM's stranglehold on this market has frustrated the laudable goals of the program." *See id.* The plaintiffs also allege a laundry list of bad acts, such as fraud and violations of environmental regulations, committed by the defendants.

These conclusory allegations are insufficient to establish an actual antitrust injury. *See Capital Imaging Assocs. v. Mohawk Valley Med. Assoc.,* 996 F.2d 537, 543 (2d Cir.1993)(Plaintiff must allege that "the challenged action has had an actual adverse effect on competition as a whole in the relevant market."); *John's Insulation, Inc. v. Siska Constr. Co., Inc.,* 774 F.Supp. 156, 163 (S.D.N.Y.1991)("Conclusory allegations which merely recite the litany of antitrust [injuries] will not suffice."). The allegation that NEEM received the majority of C/A assignments does little to establish an injury to competition. Plaintiffs

complaint alleges injury to Plaintiffs as a disappointed competitor. It does not sufficiently allege injury to competition. *See Balaklaw,* 14 F.3d at 797.

Plaintiffs allegations regarding fraud and violations of environmental and workplace regulations, though they may have merit in another context, do not implicate the antitrust laws and cannot serve as the basis for an antitrust injury.

Plaintiffs have failed to define a relevant market and have not established that defendants actions led to anticompetitive effects or an antitrust injury; therefore, the Plaintiffs cannot maintain the antitrust claims, counts one through four of the Amended Complaint.

## II. *State Law Claims*

In addition to the antitrust claims, Plaintiffs also bring claims against all defendants for violations of CUTPA and against NEEM and Hinson for intentional interference with prospective economic advantage. Because the court has determined that the plaintiffs failed to state a claim under the antitrust laws, the plaintiffs' state law claims may not go forward.

### A. CUTPA Claim

Plaintiffs concede that because the allegations forming the basis of the CUTPA claim are the same as those underlying the antitrust claims, the CUTPA claim must fail if the antitrust claims fail. The court, having dismissed the antitrust claims, must also dismiss the CUTPA claim for failure to state a cause of action. *See CDC Techs. Inc. v. IDEXX Labs., Inc.,* 7 F.Supp.2d 119 (D.Conn.1998).

### B. Intentional Interference with Prospective Economic *Advantage*

██ Plaintiffs charge defendants NEEM and Hinson with intentional inter-

ference with prospective economic advantage. To state such a claim under Connecticut law, "there must be evidence that the interference resulted from the defendants commission of a tort. [A] claim is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." *Downes Patterson Corp. v. First Nat'l Supermarkets, Inc.*, 64 Conn. App. 417, 429, 780 A.2d 967 (2001).

■ Plaintiffs allege that NEEM and Hinson acted maliciously. This will not suffice to support this claim. Under Connecticut law, plaintiffs bear the burden of establishing that NEEM and Hinson engaged in intentional interference without justification, not malice alone. *See* 4 Restatement (Second, Torts § 766, comment (s)(1979)); *Daley v. Aetna Life and Cas. Co.*, 249 Conn. 525, 535–36 (1999). This, they have not done.

Even if this interference claim had merit, the court, having dismissed the antitrust claims and, thus, the basis for original federal jurisdiction, would decline to exercise supplemental jurisdiction over this state law claim. *See* 28 U.S.C. § 1367.

III. *Standing of the Individual Plaintiffs*

■ The individual plaintiffs, Albano and Hudson, former employees of NEEM and one-time prospective employees and shareholders of NAES, lack standing to assert antitrust and CUTPA claims.

■ A party seeking to invoke the court's jurisdiction bears the burden of alleging sufficient facts to show that he has a right to bring the action. *See Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). It is well established that neither employees nor shareholders of a corporation, much less *prospective* employees and shareholders, have standing to bring claims for antitrust violations affect-

ing the corporation. *See Air Courier Conference of Am. v. American Postal Workers Union, AFL–CIO*, 498 U.S. 517, 528 n. 5, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991)("Employees have generally been denied standing to enforce competition laws because they lack competitive standing and direct injury."); *Adams v. Pan Am. World Airways, Inc.*, 828 F.2d 24 (D.C.Cir.1987)(affirming dismissal in antitrust case for lack of standing by former airline employees against airline that allegedly drove their former employer out of business); *Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.1986)(holding that shareholders lacked standing to assert antitrust claim); *Vincel v. White Motor Corp.*, 521 F.2d 1113, 1119 (2d Cir. 1975). "The rationale underpinning [the rule that shareholders do not have standing to bring an antitrust action in their individual capacity] is that the antitrust laws are not designed to allow recovery for anyone incidentally injured by a violation of the antitrust laws." *Schulz v. Pataki*, 137 F.Supp.2d 80, 82 (N.D.N.Y.).

Likewise, termination from NEEM cannot confer standing on the plaintiffs to assert antitrust claims. *See Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1376 (9th Cir.1996). The Ninth Circuit has carved out a narrow exception to allow employees to assert antitrust claims where the terminated employee is an "essential participant" in the antitrust scheme and the employee's termination is a "necessary means" to accomplish the scheme. *See Ostrofe v. H.S. Crocker Co., Inc.*, 740 F.2d 739 (9th Cir.1984). In the scenario contemplated by *Ostrofe*, the employee has "the greatest incentive to challenge the antitrust violation." *Vinci*, 80 F.3d at 1376. The complaint makes no allegations that would bring it within the *Ostrofe* exception. Plaintiffs do not allege that they were an essential part of the antitrust

scheme or that they were fired as a means to accomplish the antitrust scheme.

The individual plaintiffs also fail to establish standing to bring the CUTPA claims. Any possible injury suffered by plaintiffs is an indirect injury and therefore cannot confer standing pursuant to CUTPA. *See Collins v. Gulf Oil Corp.,* 605 F.Supp. 1519, 1523 (D.Conn.1985).

The individual plaintiffs failed to meet their burden of establishing standing to bring the antitrust and CUTPA claims.

## CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss [doc. # s 12 & 14] are GRANTED.