STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                          BCD-CV-19-06


PATRIOT MECHANICAL, LLC

      Plaintiff


v.                                      **COMBINED ORDER ON MOTION TO**
                                        **AMEND AND MOTION PURSUANT TO**
                                        **RULE 56(f) in RESPONSE TO DEFENDANTS'**
                                        **MOTION FOR SUMMARY JUDGMENT**


MAINE CONTROLS, LLC,
et al,

      Defendants


Before the Court is Plaintiff's Motion to Amend its Complaint, along with Plaintiff's

Motion pursuant to Rule 56(f) in response to Defendants' Motion for Summary Judgment.

Plaintiff is represented in this matter by Attorney Daniel Feldman and Defendants are

represented by Attorney Marie Mueller and Attorney Robert Ruesch.

On December 3, 2018 Plaintiff brought an eleven-count Complaint against the

Defendants. By order dated March 20, 2019, the Court granted Defendants' Motion to dismiss

Counts I (Fraud); Counts II and VI (Negligence); Counts III and IV (Defamation); Counts VII

and VIII (Anti-trust); and Count X (Breach of Confidential Relationship). The Motion to Dismiss

1

was orally argued on February 26, 2019, the same day that the Court issued a Case Management Scheduling Order ("CMO").

That Order set a deadline of April 12, 2019 to amend pleadings or join parties. The Motion to Amend pending before the Court is dated November 15, 2019. On November 18, 2019, Defendants filed a Motion for Summary Judgment and in response the Plaintiff filed on November 27, 2019 the pending Rule 56(f) motion.  Discovery was set to end pursuant to the CMO on August 30, 2019 but that deadline, along with the deadline to request a jury trial, was extended by an agreed-upon order to October 29, 2019. The trial month set by the CMO, which has not been extended, is March of 2020.

*Motion to Amend*

The parties have made multiple arguments about the motion to amend. Defendants argue it is untimely, and that it is a futile attempt to revive dismissed claims based on no new information. Plaintiff claims that the motion to amend is not untimely or futile but did concede at oral argument that it was no longer seeking to amend the complaint to add or "revive" any defamation claims (counts III and IV). Therefore, the only claims that Plaintiff now seeks to add are anti-trust claims (counts VII and VIII).

The Court has considered the parties' arguments about the Plaintiff's attempt to revive the anti-trust claims. While they both make extensive arguments about the viability of Plaintiff's anti-trust claims, the Court has concluded that under these circumstances it is simply too late in this litigation for these amendments to be made. Plaintiff is correct that a late request to amend is not, by itself, fatal to amendment. However, there is more to consider here, including the fact that this matter was supposed to be tried this month, and a fully dispositive motion for summary

2

judgment was filed several months ago. The Plaintiff has failed to articulate how granting this motion under these circumstances is in the interests of justice, particularly where Plaintiff agrees that a separate lawsuit could be filed on these claims. The Plaintiff has failed to convincingly articulate what information was just learned, so late in the process, that would justify the Court having to extend by months further discovery and motion practice. The Court will therefore deny the Motion to Amend as untimely.

### *Motion brought pursuant to Rule 56(f)*

With respect to the Plaintiff's Rule 56(f) motion, the parties agree on the five criteria that the Court must consider in deciding the motion. Defendants seem to concede that Plaintiff meets three of the five criteria, but challenge Plaintiff's ability to establish two of them, specifically whether Plaintiff "has been diligent in conducting discovery, and show good cause why the additional discovery was not previously practicable with reasonable diligence" and to "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist, and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Simas v. First Citizens' Fed. Credit Union* 170 F. 3d 37, 46 n. 4 (1st Cir. 1999).

Defendants concede that the witness Plaintiff wishes to depose, Mr. Parks, is "a key witness" [Def.'s Opposition, pg. 2] and the Court is persuaded that his testimony is at least arguably relevant as to what, if any, contract may have been formed.

Further, with respect to whether Plaintiff has been diligent in conducting discovery, the Court has reviewed the timeline of events leading up to this motion and finds that Plaintiff was reasonably diligent given the reasons the deposition was continued the first time, as well as other

factors. The deposition of Mr. Parks was mistakenly set for Veterans Day, and the parties agreed to reschedule it. Over the next few weeks the parties were working on different aspects of this litigation, including exchanging discovery. In mid-November Plaintiff was filing the Motion to Amend, and Defendants were working on the Motion for Summary Judgment. The Court has therefore concluded that a brief extension of the discovery deadline would be appropriate to allow for Mr. Park's deposition to be taken. This is the only discovery that will be permitted during this brief period by either party, absent extraordinary cause.

The entry will be: Plaintiff's Motion to Amend is DENIED. Plaintiff's Rule 56(f) Motion is GRANTED. The discovery deadline is extended until April 3, 2020 to permit Mr. Park's deposition to be completed. Plaintiff's Opposition to the pending Motion for Summary Judgment brought by Defendants shall be filed by April 17, 2020, with Defendants' Reply due by April 24, 2020. The Court will then decide if oral argument will be scheduled or the matter taken under advisement.

| March 2, 2020 | /S |
|---|---|
| **DATE** | **M. Michaela Murphy** |
| | **Justice, Business and Consumer Court** |

*Patriot Mechanical, Inc.*

*v.*

*Maine Controls, LLC and Mechanical Services, LLC*

| Party Name: | Attorney Name: |
|---|---|
| *Patriot Mechanical Inc.* | Daniel Feldman, Esq.<br>David Weyrens, Esq.<br>**Hallett, Whipple, Weyrens**<br>6 City Center Ste 208<br>Portland, ME 04112 |
| *Maine Controls, LLC and*<br>*Mechanical Services, LLC* | Robert Ruesch, Esq.<br>Marie Mueller, Esq<br>**Verrill Dana**<br>One Portland Square<br>Portland, ME 04101 |

STATE OF MAINE                                 BUSINESS & CONSUMER DOCKET
CUMBERLAND, ss.                                DOCKET NO. BCD-CV-19-06


PATRIOT MECHANICAL, LLC              )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )         **ORDER ON DEFENDANTS'**
                                     )         **PARTIAL MOTION TO DISMISS**
MAINE CONTROLS, LLC, et al.,         )
                                     )
          Defendants.                )


Pending before the Court is Defendants Maine Controls, LLC and Mechanical Services, LLC's (collectively "Maine Controls") partial motion to dismiss pursuant to M.R. Civ. P. 12(b)(6). Plaintiff Patriot Mechanical, LLC ("Patriot") opposes the motion. The Court heard oral argument on the motion on February 26, 2019. A. Robert Ruesch, Esq. appeared for Maine Controls and Dan Feldman, Esq. appeared for Patriot.

BACKGROUND

The following facts are taken from Maine Controls' Complaint and for purposes of this motion are treated as admitted. Patriot, an HVAC contractor, requested a quote from Maine Controls on the cost of services and component parts in preparing its bid for a project at the City of Portland, Maine's North Deering fire station (the "Project"). (Pl's Compl. ¶¶ 9, 16.) Patriot assumed that Maine Controls components and services were required to win the contract. (Pl's Compl. ¶¶ 10-12.) Maine Controls quoted a base bid price of $82,250 (the "Quote") for the services and components necessary for the Project. (Pl's Compl. ¶ 17.) Patriot believed this to be the standardized quote given to any and all mechanical contractors who sought a quote for the Project. (Pl's Compl. ¶ 19.) Furthermore, Patriot believed that Maine Controls wanted Patriot to believe

1

that the Quote was a standardized quote given to any and all mechanical contractors who sought a quote for the Project. (Pl's Compl. ¶ 20.) Patriot used the Quote in its bid for the Project. (Pl's Compl. 23.) Patriot's bid was roughly $25,000 higher than the winning bid for the Project. (Pl's Compl. ¶ 24.) This resulted in damages to Patriot both in the form of lost profits for failing to submit a winning bid for the Project and for damage to Patriot's reputation for submitting an artificially inflated bid. (Pl's Compl. ¶ 36.) Patriot filed an eleven-count complaint against Maine Controls for these alleged misdeeds; in the instant motion, Maine Controls seeks dismissal of eight of those counts.

STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* "The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law" and thus subject to *de novo* appellate review. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

DISCUSSION

I.    Fraud

In Count I, Patriot pleads fraud against Maine Controls. To prevail on a fraud claim, a plaintiff must prove the following elements by clear and convincing evidence:

> (1) A party made a false representation, (2) The representation was of a material fact, (3) The representation was made with knowledge of its falsity or in reckless

2

disregard of whether it was true or false, (4) The representation was made for the purpose of inducing another party to act in reliance upon it, and (5) The other party justifiably relied upon the representation as true and acted upon it to the party's damage.

*Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280 (citing *Flaherty v. Muther*, 2011 ME 32, ¶ 45, 17 A.3d 640). In its motion to dismiss, Maine Controls claims that Patriot's allegation that the Quote contained information that was knowingly false or provided with reckless disregard as to its falsity fails as a matter of law because the putative misrepresentation—the Quote—cannot be true or false. Patriot responds that in fact Maine Controls represented that the Quote was for what "the services and parts would cost a bidder" when it knew that the cost was in fact significantly lower. (Pl's Compl. ¶¶ 39-42.)

Although most causes of action are allowed to be pleaded generally, Maine Controls points out that M.R. Civ. P. 9(b) requires "the circumstances constituting fraud" to be "stated with particularity." Under this standard, Patriot's general allegations that the Quote was represented as being the cost (as opposed to the price) of the requested services and components is insufficient to adequately plead the "false representation" element of fraud. The mere fact that Maine Controls' Quote was addressed to "mechanical contractor" rather than Patriot simply does not make the Quote a lie, even if Patriot were to ultimately prove at trial that the Quote is not an accurate representation of the actual cost of the requested parts and services. *See Eaton v. Sontag*, 387 A.2d 33, 38 (Me. 1978) (Every man has the right to ask any price he sees fit [for his goods or services]").

Patriot has therefore failed to properly allege that Maine Controls made a false representation when it issued the Quote under M.R. Civ. P. 9(b). The Complaint therefore fails to allege an essential element of fraud. Maine Controls' motion is granted with respect to Count I.

II.    Negligence

Patriot pleads negligent misrepresentation (Count II) and negligence (Count VI) against

3

Maine Controls. In its motion, Maine Controls does not argue that Patriot has failed to adequately allege the elements of either claim. Instead, Maine Controls argues that these claims are barred by the economic loss doctrine. Patriot responds that the economic loss doctrine is only applicable to actions based on product failure and merely limits "tort recovery for a defective product's damage to itself." *Oceanside at Pine Point Condominium Owners Ass'n v. Peachtree Doors, Inc.*, 659 A.2d 267, 270 (Me. 1995).

In general, the economic loss doctrine prevents recovery in tort for purely economic damages and has been applied to bar tort claims in actions grounded in breach of contract or warranty theories, including claims involving breach of a service contract. *Oceanside at Pine Point Condo. Owners Ass'n.*, 659 A.2d at 269-71. Patriot is correct that the Law Court has not yet recognized application of the economic loss doctrine outside the context of tangible property. Other Maine courts, including the U.S. District Court for the District of Maine, the Maine Superior Court, and this Court have applied the doctrine to service contracts as well. *See Me. Rubber Int'l v. Envtl. Mgmt. Grp., Inc.*, 298 F. Supp. 2d 133, 136 (D. Me. 2004); *Twin Homes, Inc. v. Molley*, No. CV-01-298, 2002 Me. Super. LEXIS 209 (Nov. 14, 2002); *Bayreuther v. Gardner*, No. CV-99-352, 2000 Me. Super. LEXIS 140 (June 21, 2000); *SME Corp. v. Belfast Bridge, LLC*, No. BCD-WB-CV-07-28, 2009 Me. Bus. & Consumer LEXIS 25, at *26-27 (Bus. & Consumer Ct. Apr. 8, 2009, *Humphrey, C.J.*).

Patriot's negligence claim alleges only that Maine Controls breached a duty. (Pl's Compl. ¶ 83.) Presumably, this duty arose out of Patriot's request for a quote from Maine Controls. As explained in more detail below, Patriot's only other possible alternative basis for imposition of a duty—the existence of a confidential relationship between the parties—is wholly inadequate as a matter of law. The parties are both commercial entities whose relationship could at best be

4

described as a commercial contract.[1] *See Schmid Pipeline Constr. v. Summit Nat. Gas of Me., Inc.*, No. 1:13-cv-464-GZS, 2014 U.S. Dist. LEXIS 100435, at *10 (D. Me. June 23, 2014) (where "dispute is over the 'value and quality of what was purchased,' in the absence of any facts of a special relationship between the parties that might give rise to duty in tort (e.g., a fiduciary relationship), an aggrieved party's recourse should be governed by the terms of the contract. Whether a court formally extends application of the economic loss doctrine to bar tort recovery, or whether a court determines that recognition of a duty in tort under the circumstances is not appropriate, the result is the same."). Therefore, Plaintiffs' remedy for an alleged breach of the undefined "duty" necessarily sounds only in contract. *See id.*

Several of the cases cited above recognize that the economic loss doctrine bars claims for negligent misrepresentation in actions based on contract or warranty theories. *See id.* at *5-6, 10; *Me. Rubber Int'l.* 298 F. Supp. 2d at 136; *Peachtree Doors*, 659 A.2d at 269-71. Patriot's complaint alleges Maine Controls "made false statements, misrepresentations and representations;" all related to the Quote that Patriot used in its bid for the Project. (Pl's Compl. ¶ 52.) As with Plaintiffs' negligence claim, this claim is at best a mislabeled contract claim, the recovery for which sounds in contract alone. Plaintiffs' claims for negligence and negligent misrepresentation will be dismissed.

III.    Defamation

In Counts III and IV, Patriot alleges that Maine Controls is liable for defamation and

---

[1] Maine Controls has not moved for dismissal of Patriot's breach of contract claim, Count IX, in the instant motion. (Pl's Compl. ¶¶ 96-101.) As noted in *Me. Rubber Int'l*, Patriot still have "the traditional recourse for breach of contract and any damages [it] can prove under contract law standards, given the contract [it] entered into. Contract law allows for foreseeable damages arising from the breach (though these may be limited by the contractual language.)" 298 F. Supp. 2d at 138 & n. 7; *see also Peachtree Doors*, 659 A.2d at 271 ("Plaintiffs' claims for economic damages—'the costs of all repairs, renovation, corrections and replacements related to the Defendant's defective performance of its contract'—are properly addressable under a warranty theory.").

5

defamation per se. Maine Controls argues that Patriot has failed to allege any of the elements of defamation. A claim for defamation requires (1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication. *Cole v. Chandler*, 2000 ME 104, ¶ 5, 752 A.2d 1189.

The supposedly defamatory statement is the Quote. Patriot's opposition devotes several pages to persuading the Court that the Quote is a statement. However, regardless of whether the Quote is a statement, the allegations are insufficient to show that it is either false or defamatory. It is not false because it is incapable of being true or false by its very nature, as explained above. *See Eaton*, 387 A.2d at 38. It is not defamatory because it does not "tend[] so to harm [Patriot's] reputation . . . as to lower [it] in the estimation of the community or to deter third persons from associating or dealing with [it]." *Schoff v. York Cty.*, 2000 ME 205, ¶ 9 n.3, 761 A.2d 869 (citing *Bakal v. Weare*, 583 A.2d 1028, 1029 (Me. 1990); Restatement (Second) of Torts § 559(1977)). In fact, the statement says nothing about Patriot whatsoever. "[A] statement is defamatory only if it is of or concerning a plaintiff." *Gaudette v. Davis*, 2017 ME 86, ¶ 25 n.10, 160 A.3d 1190 (citing *Hudson v. Guy Gannett Broad. Co.*, 521 A.2d 714, 716 (Me. 1987)). Furthermore, there is no allegation that Maine Controls "published" the Quote to anyone third party. In paragraph sixty-six of its complaint, Patriot alleges that Maine Controls made statements that "were unprivileged publications to a third party" but provides no further detail; other factual allegations seem inconsistent with the notion that Maine Controls shared the Quote with anyone other than Patriot. (*See* Pl's Compl. ¶¶ 23, 33.) In opposition to Maine Control's motion to dismiss, Patriot clarified that it is relying on an agency theory whereby Maine Controls made Patriot its agent by providing

6

a quote that was designed to be shared with another. Patriot cites no authority for this novel theory of publication and the Court is not aware of any.

In sum, Patriot has failed to state a claim for defamation under either a traditional or "defamation per se" theory. Counts III and IV of Patriot's Complaint must be dismissed.

IV.     Antitrust

Patriot alleges that Maine Controls violated Maine' antitrust laws, 10 M.R.S. §§ 1101-1102.[2] Maine Controls responds that Patriot has failed to adequately allege necessary elements under both section 1101 and 1102.

In Count VII, Patriot alleges a violation of 10 M.R.S. § 1101, which provides: "Every contract, combination in the form of trusts or otherwise, or conspiracy, in restraint of trade of commerce in this State is declared to be illegal. Whoever makes any such contract or engages in any such combination or conspiracy is guilty of a Class C crime." Maine Controls argues that Patriot has not alleged the existence of a "contract, combination in the form of trusts of otherwise, or conspiracy" because the Complaint at most alleges a "conspiracy" between the two Defendants, and because the two Defendants are in fact the same company, that company could not have "conspired with itself." *See Podiatrist Ass'n v. La Cruz Azul de P.R., Inc.*, 332 F.3d 6, 12 (1st Cir. 2003) ("the plaintiff must show concerted action between two or more separate parties" under the federal analog to 10 M.R.S. § 1101).[3] Patriot does not necessarily challenge this requirement, but argues that the alleged conspiracy is not necessarily between the two Defendants[4] but rather between the Defendants and the other bidders on the Project who got a quote from Maine Controls.

---

[2] Section 1104 gives any person injured directly or indirectly in its business or property by another person's violation of section 1101 or 1101 a private right of action to sue for the injury. 10 M.R.S. § 1104.

[3] Maine courts may consider federal antitrust law as persuasive authority when construing Maine's antitrust statute. *McKinnon v. Honeywell Int'l, Inc.*, 2009 ME 69, ¶ 19, 977 A.2d 420.

[4] Patriot does not object to the Court considering Def's Ex. C, a public filing with the Maine Secretary of State that shows Maine Controls is an assumed name of Mechanical Services. *See Moody v. State Liquor & Lott. Comm'n*, 2004

7

The problem with Patriot's argument is that the Complaint does not allege a conspiracy between Maine Controls and anyone else who requested a quote for Maine Controls' services and components for the Project. Patriot only alleges that "[t]he defendants entered into a contract, combination or conspiracy regarding the quote for components and service for the [Project]." (Pl's Compl. ¶ 86.) There are no allegations with respect to who the Defendants entered into this alleged conspiracy with. Patriot claims that it alleges a conspiracy between Maine Controls and the other bidders on the Project in paragraphs twenty-four through twenty-six and paragraph thirty-two of the Complaint. However, these allegations claim only that Maine Controls offered a lower quote to the winning bidder and that Patriot lost the bid as a result. This is not at all the same as alleging that Maine Controls conspired with the other bidders to "fix" a quote for the winning bidder. *Cf. In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 336 (3d Cir. 2010) ("Bid rigging— or more specifically, as alleged in this case, bid rotation—is quintessentially collusive behavior subject to per se condemnation under [the federal analog to 10 M.R.S. § 1101]."). At oral argument, Patriot conceded that it is "not aware of a conspiracy in the classic sense" between Maine Controls and any other bidder. In sum, Count VII must be dismissed for failure to allege a contract, combination in the form of trusts or otherwise, or conspiracy, in restraint of trade.

Count VIII alleges an antitrust violation under 10 M.R.S. § 1102, which provides: "Whoever shall monopolize or attempt to monopolize or combine or conspire with any other persons to monopolize any part of the trade of commerce of this State shall be guilty of a Class C crime." Maine Controls argues that Patriot has not defined the relevant market or alleged an

ME 20, ¶ 11, 843 A.2d 43. However, in its written opposition, Patriot does argue that it is a question of fact as to whether the two Defendants are in fact the same company, notwithstanding its allegation in paragraph 15 of its Complaint: "The exact relationship between Maine Controls and Mechanical services is unclear but it appears that for *all intents and purposes, they are the same entity*." (emphasis added). It seems that Def's Ex. C is dispositive of this factual issue, but in any event, it is not really relevant to Patriot's section 1101 claim. The effect of the Defendants' combined control of the market in Maine, and whether that effect is anticompetitive, is more properly considered in the context of a section 1102 claim, which is discussed below.

"antitrust injury," both of which are essential elements to state a claim under section 1102. At oral argument, Patriot claimed that discovery will be necessary to define the relevant market and otherwise responds that it has alleged an "antitrust injury" sufficient to state a claim under section 1102.

At least one U.S. District Court in the First Circuit has dismissed an antitrust claim for failure to adequately "allege a relevant geographic and product market in which trade was unreasonably restrained or monopolized." *N. Am. Energy Sys., LLC v. New Eng. Energy Mgmt.*, 269 F. Supp. 2d 12, 16 (D. Conn. 2002) (citing cases). *Cf. Envirnmt'l Exch., Inc. v. Casella Waste Sys.*, No. CV-05-25, 2005 Me. Super. LEXIS 140, at *5-6, 12-14 (Oct. 24, 2005, *Hjelm, J.*) (denying motion to dismiss plaintiff's section 1102 claim where relevant geographic and product market specifically alleged to be "sources of clean fly ash in northeastern Maine"). Like in *N. Am. Energy Sys., LLC*, and unlike *Envirnmt'l Exch., Inc.*, Patriot's allegations include virtually no definition of the relevant market in terms of either geographic scope or products. In paragraph eleven, Patriot alleges that Maine Controls was in a position to "corner the market" because "the North Deering Fire Station already us[ed] its components." Later, Patriot alleges that Maine Controls "monopolize[d] trade for components and services . . . regarding a part of the trade or commerce of the State of Maine." (Pl's Compl. ¶¶ 92-93.) At the oral argument, Patriot suggested "pre-existing boilers with components in them" as the product market and "boilers in the state of Maine, maybe smaller" as the relevant geographic market. The problem with Patriot's suggestion at oral argument is that it goes beyond what was actually alleged in the Complaint, which describes only a single transaction besides a passing reference to "a part of the trade or commerce of the State of Maine." (Pl's Compl. ¶ 93.) Maine Controls is entitled to have notice of what Patriot intends to prove in terms of the geographic and product market that Maine Controls has allegedly

9

monopolized. *See N. Am. Energy Sys., LLC*, 269 F. Supp. 2d at 16. Even if Patriot proves the allegation that Maine Controls was in a position to "corner the market" on the Project, i.e. it was the only vendor that could provide the necessary services and components on the Project and therefore could essentially charge whatever it wanted and decide who won the bid, it does not follow that Maine Controls therefore had a monopoly over the servicing of all pre-existing boilers in Maine.

The question of whether Patriot has alleged an antitrust injury is in some ways dependent on whether Patriot can allege a geographic and product market over which Maine Controls has a monopoly. As alleged, Patriot is a would-be customer of Maine Controls who sought to obtain Maine Controls' components and services, and thus a "presumptive proper" plaintiff. *See In re Compact Disc Min. Advertised Price Antitrust Litig.*, 456 F. Supp. 2d 131, 146 (D. Me. 2006). Couched in terms of a single transaction[5]—the Quote on the Project—Patriot's injury seems much more like a claim for breach of contract than antitrust. *See Central Distribs., Inc. v. Labatt US Operating Co.*, No. BCD-CV-12-33, 2012 Me. Bus. & Consumer LEXIS 41, at *15 ("[Plaintiff] has alleged no facts as to how the competition among wholesalers has been weakened or affected. The gist of this claim is really a restatement of a breach of contract action."). In effect, Patriot has pleaded "no more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action,'" and therefore "fails to state a claim for antitrust statute violations." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Therefore, Count VIII must be dismissed

---

[5] Maine Controls claims that even in relation to this single Project, it could not have "cornered the market" because it was only one of six approved vendors for the Project. (Def's Ex. A.) Patriot alleges, and argues, that regardless of what is reflected in Defendants' Exhibit A, only Maine Control's service and components would have been acceptable. (Pl's Compl. ¶¶ 10-12.) Patriot is entitled to try to prove this allegation at trial; however, as explained above, it was required to allege more—and need to prove more—to prevail on a section 1102 antitrust claim.

for failure to allege a definable relevant geographic and product market in which trade was constrained or any injury resulting from Maine Control's purported anticompetitive conduct.

V.     Breach of Duty of a Confidential Relationship

In Count XI, Patriot alleges the existence of a confidential relationship between Patriot and Maine Mechanical and, further, that Maine Mechanical breached a duty of loyalty that it owed to Patriot by virtue of that relationship. However, Patriot does not allege any specific facts of a particular relationship, only reciting the basic elements of a fiduciary duty. (Pl's Compl. ¶¶ 103-09.)

"To survive a motion to dismiss, the plaintiff must allege facts with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710 (quotations omitted). "Reciting the basic elements of a fiduciary relationship cannot substitute for an articulation in the complaint of the specific facts of a particular relationship." *Id.*; *see also Bryan R. v. Watchtower Bible & Tract Soc. of N.Y., Inc.*, 1999 ME 114, ¶ 21, 738 A.2d 839 ("because the law does not generally require individuals to act for the benefit of others, the factual foundations of an alleged fiduciary relationship must be pled with specificity").

In opposition to Maine Controls' motion to dismiss, Patriot does not argue that it has alleged facts necessary to meet the higher pleading standard for breach of fiduciary duty. Instead, Patriot argues that it is entitled to the inference that a fiduciary relationship arose between the parties based on the Quote. *See, e.g., Brown v. Me. State Emples. Ass'n*, 1997 ME 24, ¶ 5, 690 A.2d 956 (motion to dismiss only granted when "treating the material allegations of the complaint as true and examining the complaint in the light most favorable to the plaintiff . . . it alleges the elements of a cause of action against the defendant or alleges facts that could entitle the plaintiff

to relief under some legal theory") (quotation omitted). However, this general pleading standard is significantly narrowed when the existence of a fiduciary or confidential relationship is alleged. A plaintiff must plead specific facts for the Court to determine whether those facts could give rise to a fiduciary relationship. *Ramsey*, 2012 ME 113, ¶ 6, 54 A.3d 710; *Bryan R.*, 1999 ME 114, ¶ 21, 738 A.2d 839. The facts alleged here do not meet this standard. Patriot requested a quote from Maine Controls in an arms-length transaction; that was the extent of their relationship based on the facts alleged in the complaint. *See Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 18, 133 A.3d 1021 (fiduciary duty "does not arise merely because of the existence of . . . business relationships"). Patriot has not stated a claim for breach of confidential relationship based on the allegations in the Complaint. Maine Controls motion to dismiss is granted with respect to Count XI.

## CONCLUSION

Based on the foregoing it is ORDERED:

That Defendants Maine Controls and Mechanical Services' motion for partial dismissal is GRANTED. Counts I, II, III, IV, VI, VII, VIII, and X of Plaintiff Patriot Mechanical's Complaint are dismissed

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

**Dated: March 20, 2019**                     /s
                                              **M. Michaela Murphy**
                                              **Justice, Business and Consumer Court**